UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MISHA MORTON,

                    Plaintiff,

                    **OPINION & ORDER**
                    05-CV-4000 (SJF) (AKT)

    -against-

NASSAU COUNTY POLICE DEPARTMENT
DETECTIVE SERGEANT BRIAN SWEENEY,
LIEUTENANT MCGLAUGHLIN,
DETECTIVE JOHN CEPRINI,
DETECTIVE JOHN FITZGEALRD,
DETECTIVE LAURETTE HARPER,
DETECTIVE EDWARD GOLLER,
LIEUTENANT ROBERT NEWBERT individually and in their Official capacities and as
Employees of the Nassau County Police Department

                Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

I.     Introduction

On August 22, 2005, Plaintiff Misha Morton ("Plaintiff" or "Morton") commenced this action against Detective Sergeant Brian Sweeney ("Sweeney"), Lieutenant Arthur McGloughlin ("McGloughlin")(s/h/a Lieutenant McGlaughlin), Detective John Ceprini ("Ceprini"), Detective John Fitzgerald ("Fitzgerald")(s/h/a Fitzgealrd), Detective Laurette Harper, Detective Edward Goller and Lieutenant Robert Newbert ("Newbert") (the "Individual Defendants") and the Nassau County Police Department ("NCPD," and, together with the Individual Defendants, collectively "Defendants"), seeking damages and unspecified injunctive relief pursuant to, *inter alia*, 42 U.S.C. § 1983 ("§ 1983").

Plaintiff's complaint alleges (1) negligence and (2) deprivation of her constitutional

1

rights under the Fourth and Fourteenth Amendments of the United States Constitution, Article 1 § 72 of the New York Constitution and §1983 against all Defendants; (3) a *Monell* claim, (4) a claim for negligent hiring, screening, retention and training, and (5) *respondeat superior* liability for the state law violations alleged against the NCPD.

Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Defendants' complaint is dismissed in its entirety.

II. Facts[1]

Plaintiff's § 1983 claim arises from the placement of a Global Positioning System transmitter (the "GPS Device") on her automobile and the subsequent tracking of her vehicle.

A. The Task Force Investigation

In the summer of 2002, in response to a series of burglaries in Nassau County, a special burglary Task Force ("Task Force") was created by NCPD. At the scene of one burglary, two males were seen fleeing in a black Mitsubishi Eclipse with Tennessee license plate BER523. A similar vehicle with Tennessee plates was seen at the scene of another burglary. A black Mitsubishi was also spotted at the scene of a third burglary.

Defendant Harper, who was directed by Defendant Sweeney to attempt to locate the vehicle, determined that it was registered to Plaintiff Misha Morton at a Chattanooga, Tennessee address. After verifying that the vehicle had never been reported stolen, Harper traced Plaintiff and the vehicle to an address in Far Rockaway, Queens.

---

[1] The facts are derived from (1) Defendant's statement of material facts pursuant to Local Rule 56.1 and the accompanying affidavits and other evidentiary material filed in support of Defendant's motion for summary judgment, (2) the accompanying evidentiary material filed in Plaintiff's response to the motion and (3) from the summary of facts in the related case of People v. Lacey, 3 Misc. 3d, 787 N.Y.S.2d 680(N.Y. Nassau County Ct. May 6, 2004) (unpublished opinion). The facts are undisputed unless otherwise indicated.

A number of NCPD detectives, including Defendants Fitzgerald and Cipriani, were assigned to provide visual surveillance of the vehicle. On or about August 21, 2002, McLoughlin sought authority to place a GPS Device on Plaintiff's vehicle, indicating that a car matching the description and license plate of that vehicle had been seen at the scene of several of the burglaries, and that monitoring the movement of the vehicle might lead to further information about the burglaries.

The GPS transmitter that Defendants placed on Plaintiff's car records the date, time, latitude and longitude of the transmitter in programmed intervals of two to three minutes each time the GPS device moves. The GPS transmitter is approximately the size of a pack of cigarettes, and is powered by batteries, which last approximately two to three weeks. The GPS transmitter has a cellular modem component that permits remote access to the stored tracking information and current location of the transmitter.

Defendant Newbert approved the request, and Defendant Goller prepared and tested a GPS Device which was magnetically attached to Plaintiff's vehicle while it was parked on a street in Far Rockaway on August 28, 2002.

Richard Lacey ("Lacey") became a person of interest in the burglaries when he was observed at Plaintiff's home. Upon further investigation, it was learned that Lacey, who married Plaintiff on August 31, 2002, had two prior arrests for burglary.

On September 16, 2002, at approximately 11:00 A.M., Ceprini reported that Lacey was driving Plaintiff's vehicle. A surveillance team followed Lacey to Seaford, N.Y, where he was seen walking from 3860 Arthur Avenue North, entering Plaintiff's vehicle and driving away. Lacey then drove to Bernice Road, Seaford, several blocks away from the Arthur Avenue

address.  Arriving at the Bernice Road address, Ceprini and Sweeney observed Plaintiff's vehicle, parked and empty, and received a police radio call indicating that a burglary had occurred at 3860 Arthur Avenue North.  Ceprini returned to the Arthur Avenue address to take a statement from the victim, whose description of the burglar matched Lacey.

Approximately twenty minutes later, Sweeney saw Lacey walk down the driveway of 3994 Bernice Road, and place a black satchel and a canvas bag in the trunk of Plaintiff's vehicle.  Fitzgerald arrived on the scene with another officer, and upon seeing them, Lacey fled the scene on foot.  Subsequently apprehended, Lacey was identified by the victim as the burglar of the Arthur Avenue North residence.  After his arrest, Lacey made oral and written admissions regarding various burglaries, including burglaries at Arthur Avenue North and Bernice Road in Seaford.

    B.    *People v. Lacey*

Lacey, charged with, *inter alia*, multiple counts of burglary, moved to suppress the evidence obtained through NCPD's use of the GPS Device.  New York State County Court Judge Joseph Calabrese denied the motion to suppress, finding that although "the police should have obtained a warrant prior to attaching the GPS to the Mitsubishi," Lacey did not have standing to object since he was not the owner of the vehicle.  People v. Lacey, 2004 NY Slip Op 50358(U), 3 Misc.3d 1103(A), 787 N.Y.S.2d 680 (Table), 2004 WL 1040676 (N.Y. Nassau County Ct. May 6, 2004) (unpublished opinion).

III.    Analysis

    A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. Id. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. Id. at 252; Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

B.   § 1983 Federal Claims – Fourth Amendment

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Plaintiff claims that the Defendants' warrantless use of the GPS Device violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. In order to state a claim that a governmental act constitutes an unreasonable search in violation of the Fourth Amendment, a plaintiff must demonstrate a reasonable expectation of privacy in the location of the alleged search. See, e.g., Georgia v. Randolph, 547 U.S. 103, 130 (2006). "[A] Fourth Amendment search does not occur ... unless the individual manifested a

subjective expectation of privacy in the object of the challenged search, and society [is] willing to recognize that expectation as reasonable." Kyllo v. United States, 533 U.S. 27, 33 (2001) (internal citations omitted). See also Illinois v. Caballes, 543 U.S. 405, 408 (2005)("Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment.").

"A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." United States v. Knotts, 460 U.S. 276, 281 (1983). The use of the GPS Device did not permit the discovery of any information that could not have obtained by following an automobile traveling on public roads, either physically or through visual surveillance (e.g. through the use of cameras or from a helicopter), conduct that neither requires a warrant nor implicates Fourth Amendment rights. "Nothing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afford[s] them." Id. at 282.

In Knotts, law enforcement officials placed a tracking device, or "beeper," inside a barrel of chloroform which was sold to an individual suspected of manufacturing illegal drugs. After the suspect loaded the barrel containing the beeper into his vehicle, the police were able to track his movements. The Court in Knotts held that the law enforcement officials' use of the beeper did not violate the suspect's Fourth Amendment rights, because there is no reasonable expectation of privacy in the movements of an automobile on public roadways, and that the placement of the device did not constitute an unreasonable seizure. Id. Accord United States v. Garcia, 474 F.3d 994, 996 (7th Cir. 2007); United States v. Gbemisola, 225 F.3d 753, 758-759

(D.C. Cir. 2000); U.S. v. McIver, 186 F3d 1119, 1126-1127 (9th Cir. 1999); United States v. Moran, 349 F. Supp. 2d 425, 467-468 (N.D.N.Y. 2005); Alexandre v. N.Y. City Taxi & Limousine Comm'n, 2007 U.S. Dist. LEXIS 73642 (S.D.N.Y. September 28, 2007); People v. Gant, 9 Misc. 3d 611, 620 (N.Y. Co. Ct, Westchester Co., June 27, 2005).

Plaintiff attempts to distinguish the instant case from Knotts on the basis that the beeper in Knotts was not actually attached to the suspect's car, but rather loaded by the suspect into his own car, whereas here, the GPS Device was attached to Plaintiff's car by the Defendants. This minor distinction is not sufficient to remove the instant case from the ambit of Knotts.

Thus, the use of the GPS Device was not an unreasonable search or seizure in violation of the Fourth Amendment, and Plaintiff's claims pursuant to the Fourth Amendment are dismissed.

    C.    State Claims

Plaintiff's complaint alleges deprivation of her constitutional rights under Article 1 § 72 of the New York Constitution and negligence against all Defendants, and negligent hiring and *respondeat superior* liability against NCPD for the state law violations. Pursuant to 28 U.S.C. § 1367, a federal district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." However, a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c)(3). Since Plaintiff's federal claims fail as a matter of law, there is no independent basis for federal jurisdiction over Plaintiff's state law claims. See e.g., United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966) ("Certainly, if the

federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Hartline v. Gallo, 03-Civ.-1974, 2006 U.S. Dist. LEXIS 75849 (E.D.N.Y. Sept. 30, 2006); Payne v. County of Nassau, 03 Civ. 1974, 2005 U.S. Dist. LEXIS 32397 (E.D.N.Y. Sept. 9, 2005); Otero v. Town of Southampton, 194 F. Supp. 2d 167, 181 (E.D.N.Y. 2002), aff'd 59 Fed. Appx. 409 (2d Cir. 2003). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

IV. Conclusion

Defendant's motion for summary judgment is GRANTED as to all claims under federal law. Plaintiff's remaining claims under New York law are DISMISSED pursuant to 28 U.S.C § 1367(c)(3). Plaintiff's complaint is DISMISSED in its entirety. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.


_____/s/_____

Sandra J. Feuerstein
United States District Judge

Dated: November 27, 2007
Brooklyn, New York

Copies to:

Rene Myatt
The Law Office of Rene Myatt
204-04 Hillside Avenue
2nd Floor
Hollis, NY 11423
718-468-3588
Fax: 718-468-5731
Email: myattlegal@aol.com
Attorney for Plaintiff

Joseph Anci
Office of the Nassau County Attorney
1 West Street
Mineola, NY 11501
516-571-3056
Fax: 516-571-3058
Email: janci@nassaucountyny.gov
Attorney for Defendant